UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LICIA DUNAWAY

       Plaintiff,

v.                                                                            Case No. 03-73597

JBC & ASSOCIATES, INC., a/k/a JBC           Honorable Patrick J. Duggan
ASSOCIATES PC,

       Defendant.
_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on_JUNE 20, 2005.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

Plaintiff Licia Dunaway filed this action against Defendant JBC & Associates alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692-1692*o*, and a state law claim of intentional infliction of emotional distress. Presently before the Court are the parties' cross motions for partial summary judgment with respect to Plaintiff's claim based on violations of the FDCPA. The Court held a hearing on the parties' motions on June 16, 2005.

### I.     Factual Background and Allegations

Plaintiff is a resident of Macomb County, Michigan. Defendant (hereafter "JBC") is a law firm with offices in New Jersey, New York, and California. JBC primarily is engaged in debt collection. On June 22, 2000, JBC was engaged by Arbor Drugs, Inc. to collect a debt Plaintiff allegedly owed in the amount of $52.98. This debt allegedly was based on a check Plaintiff wrote to Arbor Drugs on June 12, 1997, which was returned for non-sufficient funds ("NSF").

Plaintiff alleges that representatives of JBC repeatedly telephoned her home and place of employment from January through August 2003. On these occasions, JBC representatives spoke with Plaintiff's daughters, her husband David Dunaway, or her employer Ian Lyngklip. According to Plaintiff, JBC's representatives informed these individuals *inter alia* that she owed money based on a NSF check written to Arbor Drugs, that JBC filed or would be filing a lawsuit against her, that she needed to get an attorney, and that if she failed to pay the debt JBC would file criminal charges against her and have her arrested and charged with fraud, receiving stolen property, and theft. Plaintiff also contends that JBC never sent her a written debt verification notice and, that despite being told by Mr. Dunaway that Plaintiff should not be called at her place of employment, called there on several occasions.

### II.    Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient

2

disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

When it decides a motion for summary judgment, the court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . ." *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

### III.   Plaintiff's Motion for Partial Summary Judgment

Plaintiff seeks summary judgment with respect to her claim that JBC violated the following sections of the FDCPA. First, Plaintiff asserts that JBC violated Sections 1692e(2)(A), (4), (5), and (10) by threatening to sue on a time-barred debt and threatening

to prosecute Plaintiff for theft, fraud, and receiving stolen property.  Second, Plaintiff contends that JBC violated Sections 1692b and 1692c when its debt collectors informed her children and her employer that she owes a debt and when they communicated with these individuals on more than one occasion.  Third, Plaintiff alleges that JBC violated Section 1692c(a) by contacting her place of employment after being informed that her employer prohibits such communications.  Finally, Plaintiff alleges that JBC violated Sections 1692d & 1692e(10) by allowing its debt collectors to use different aliases without a system to identify those collectors by their aliases.

**IV.    JBC's Motion for Partial Summary Judgment**

JBC seeks summary judgment with respect to Plaintiff's allegation that its debt collectors violated Section 1692d(1) by using or threatening to use violence or other criminal means to harm Plaintiff's physical person, reputation, or property.  JBC also seeks summary judgment with respect to Plaintiff's allegation that it violated Section 1692e(3).  JBC further contends that it is entitled to summary judgment with respect to Plaintiff's claim that JBC failed to send her a written notice of her debt in violation of Section 1692g(a).  Finally, JBC argues that it is not liable for any violation of the FDCPA pursuant to the bona fide error defense set forth in Section 1692k(c).

**V.    Applicable Law and Analysis**

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  In

4

passing the Act, "Congress intended . . . to eliminate unfair debt-collection practices, such as late-night telephone calls, false representations, and embarrassing communications." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 398 (6th Cir. 1998). As the Senate found to support passage of the FDCPA:

> "Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process."

*Id*. (quoting S. Rep. No. 382 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696).

Section 1692k of the FDCPA sets forth the damages for which a debt collector may be liable for violating the Act:

> . . . any debt collector who fails to comply with *any* provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of –
>
> (1) any actual damages sustained by such person as a result of such failure;
>
> (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000 . . .

15 U.S.C. § 1692k(a) (emphasis added). Thus to be entitled to damages under the FDCPA, a consumer need only prove that the debt collector violated a provision of the Act.[1] As discussed below, the Court concludes that there is no genuine issue of material

---

[1] The statute directs courts, however, to consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional" in determining the amount of a debt

fact with respect to JBC's violation of several provisions of the FDCPA. Therefore the Court will not address all of the violations of the Act for which Plaintiff seeks summary judgment, nor will it address any of the violations for which JBC seeks summary judgment in its motion.

### A. Section 1692e

Plaintiff claims JBC violated Sections 1692e(2)(A), (4), (5), and (10). Section 1692e bars a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Examples of representations forbidden by this section include, but are not limited to, the following:

> (2) The false representation of–
>
> > (A) the character, amount, or legal status of any debt
>
> . . .
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
> . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

---

collector's liability." 15 U.S.C. § 1692k(b). The FDCPA also provides that a successful consumer may collect "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(3).

6

15 U.S.C. § 1692e.  A number of courts have held that a creditor violates Section 1692e by attempting to collect a time-barred debt.  *See Kimber v. Fed. Fin. Corp.*, 668 F. Supp. 1480, 1489 (D. Ala 1987); *see also Canterbury v. Columbia Gas of Ohio*, No. 99-1212, 2001 WL 1681132, *6 (S.D. Ohio 2001)(cases cited therein).  In determining whether a debt collector has made a false representation proscribed by this section, courts apply an objective test based on the understanding of the "least sophisticated consumer." *Lewis*, 135 F.3d at 400 (citing *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993)).

     Plaintiff alleges that JBC violated Section 1692e by threatening to sue on a time-barred debt and threatening to prosecute Plaintiff for theft, fraud, and receiving stolen property when in fact such charges no longer could have been brought against Plaintiff for her alleged bounced check.  In response, JBC primarily argues that inconsistencies in the testimony of Plaintiff and her family regarding the phone calls they received from JBC's collectors raise a genuine issue of material fact as to whether its collectors in fact made the statements alleged by Plaintiff.  JBC also contends that its training documents and training program for its debt collectors, including scripts debt collectors are instructed to follow when talking to consumers, raise a doubt as to whether JBC's employees used false, deceptive, or misleading representations and means in connection with the collection of Plaintiff's alleged debt.

     Even if JBC has raised a genuine issue of material fact as to whether its debt collectors falsely told Plaintiff's daughters and husband that JBC already filed or would be filing a lawsuit against Plaintiff and that JBC would be filing criminal charges against

7

her, the undisputed evidence establishes that such false representations were made to Plaintiff's employer Ian Lyngklip. Mr. Lyngklip testified that JBC's collectors made these statements to him on two occasions. JBC neither presents facts to contradict Mr. Lyngklip's testimony nor to challenge his credibility.

Mr. Lyngklip testified that he received a call from JBC at his office (i.e. Plaintiff's work) at about 9:00 a.m. on September 6, 2003. *See* Pl.'s Mot. Ex. G at 51. Mr. Lyngklip wrote notes contemporaneous with this phone call. *See id.* Ex. H. According to Mr. Lyngklip, the JBC collector identified himself as "Joe Townsend" and said that he was calling about a debt owed by Plaintiff. *See id.* Ex. G at 51-52. Mr. Lyngklip recalled that the caller "rather freely" indicated that "this was a legal matter relating to an Arbor Drugs check that went NSF." *See id.* at 62. Mr. Lyngklip further stated that the collector told him that a case had been filed and a prosecution either was going to be or was in fact pending against Plaintiff– that this "was a criminal matter." *See id.* at 62-64.

JBC's records reporting activity in Plaintiff's case– i.e. its "Fact Sheet"– indicates that a call in fact was made by one of its collectors with respect to Plaintiff's case on September 6, 2003, at 9:37 a.m. *See* Def.'s Resp. Ex. F. The Fact Sheet further reflects that a message was left with a third party. There are no notes on the Fact Sheet as to what JBC's collectors said to this third party.[2] JBC has not presented any other evidence to contradict Mr. Lyngklip's version of what its representative said during this phone conversation, such as testimony from the employee who made the call. Thus the Court

---

[2] In fact, for the most part, the Fact Sheet contains no information about the content of any conversation between JBC's collectors and the individuals with whom they spoke.

8

concludes that Plaintiff has established her allegation that JBC's collectors told Mr. Lyngklip a case was pending against Plaintiff with respect to her check to Arbor Drugs and that Plaintiff was being or would be prosecuted for writing a NSF check.

As discussed previously, the FDCPA prohibits a debt collector from threatening to sue on a time-barred debt as such statements misrepresent the legal status of the debt and threaten legal action that cannot legally be taken. 15 U.S.C. §§ 1692e(2)(A) and (5). Threats to file criminal charges against a consumer when the statute of limitations has run to file such charges or when the debt collector or creditor does not intend to take such action violates Section 1692e as well. 15 U.S.C. §§ 1692e(4) and (5). When JBC's representatives spoke to Mr. Lyngklip in September 2003, the statute of limitations had run for JBC to pursue a civil action or criminal charges against Plaintiff based on her alleged NSF check in June 1997.[3] As such, the Court finds that JBC violated Section 1692e(5).

**B.      Sections 1692b and 1692c**

Plaintiff also asserts that JBC violated Sections 1692b and 1692c. JBC raises the same challenges with respect to Plaintiff's proof regarding these alleged violations as it

---

[3]Pursuant to Article 3 of Michigan's Uniform Commercial Code, "an action to enforce the obligation of a party to an unaccepted draft to pay the draft must be commenced within 3 years after dishonor of the draft or 10 years after the date of the draft, whichever period expires first." MICH. COMP. LAWS ANN. § 440.3118(3). Section 440.3502 provides: "[i]f a check is duly presented for payment to the payor bank . . . the check is dishonored if the payor bank makes timely return of the check or sends timely dishonor or nonpayment . . ." MICH. COMP. LAWS ANN. § 440.3502(2)(a). In Michigan, the statute of limitations for the crimes for which JBC told Mr. Lyngklip Plaintiff would be prosecuted is six years. MICH. COMP. LAWS ANN. § 767.24.

9

did in response to her prior allegation. The Court finds that Plaintiff is entitled to summary judgment based again on Mr. Lyngklip's testimony regarding JBC's September 6 telephone call and on his testimony regarding a second call he received from JBC on September 15, 2003.

Mr. Lyngklip testified that he received a second call from JBC at his office on September 15, at 3:58 p.m. *See id.* at 33-34. As he did during the first telephone call, Mr. Lyngklip wrote notes contemporaneous to this call. *See id.* Ex. I. After Mr. Lyngklip identified himself, the caller said he was Phil Riley calling from JBC Associates regarding a check written by Plaintiff to Arbor drugs. *See id.* Ex. G at 76-77. Again, JBC's Fact Sheet confirms that one of its debt collectors called Plaintiff's work on this date and at this approximate time with respect to Plaintiff's alleged debt. *See id.* Ex. F. As with the September 6 call, JBC has presented no evidence challenging Mr. Lyngklip's testimony regarding its debt collector's statements during this second telephone call.

Section 1692b of the FDCPA prohibits "any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer" from stating "that such consumer owes any debt." 15 U.S.C. § 1692b(2). Further, except for the purpose of acquiring location information regarding the consumer, Section 1692c of the Act prohibits debt collectors from otherwise communicating with third parties without the prior consent of the consumer given directly to the debt collector.[4] 15 U.S.C. § 1692c. For purposes of Section 1692c, "the term

---

[4]Section 1692c(b) also permits a debt collector to communicate with a third party with the express permission of a court or "as reasonably necessary to effectuate a postjudgment

10

'consumer' includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator." 15 U.S.C. § 1692c(d). The statements made by JBC's collectors to Mr. Lyngklip during phone conversations on September 6 and 15, 2003, clearly violated these sections.

As discussed above, JBC presents no evidence to create a genuine issue as to whether two of its debt collectors told Mr. Lyngklip that Plaintiff owed a debt. JBC also has not presented any evidence to dispute Plaintiff's contention that its collectors communicated additional information to Mr. Lyngklip that was unrelated to any effort to acquire location information about Plaintiff. There is no evidence suggesting that Plaintiff gave JBC permission to communicate with Mr. Lyngklip. Thus the undisputed evidence establishes that JBC's debt collectors communicated with a third party and conveyed information to a third party on at least two occasions, without Plaintiff's consent, in contravention of the FDCPA.

    **C.**    **Bona Fide Error Defense**

JBC argues that, even if the Court or trier of fact could conclude that it violated any of provision of the FDCPA, Plaintiff's claim should be dismissed pursuant to the Act's bona fide error defense. JBC makes this argument in response to Plaintiff's motion for summary judgment and in support of its own motion. Section 1692k(c) of the Act establishes the bona fide error defense:

> A debt collector may not be held liable in any action brought

---

judicial remedy;" however, neither of these exceptions to the general rule prohibiting such communications applies in this case.

11

> under [the FDCPA] if the debt collector shows by a
> preponderance of the evidence that [its violation of the
> statute] was not intentional and resulted from a bona fide error
> notwithstanding the maintenance of procedures reasonably
> adapted to avoid any such error.

15 U.S.C. § 1692k(c).  While the Sixth Circuit treats the FDCPA as a strict liability statute, *see Edwards v. McCormick*, 136 F. Supp. 2d 795, 800 (S.D. Ohio 2001)(citing *Frey v. Gangwish II*, 970 F.2d 1516, 1518-19 (6th Cir. 1992)), the bona fide error defense provides an exception to liability if the defendant proves that (1) it acted unintentionally and (2) it had in place "procedures reasonably adapted to avoid" the error alleged.  15 U.S.C. § 1692k(c); *Moya v. Hocking*, 10 F. Supp. 2d 847, 849 (W.D. Mich. 1998).

JBC has not offered any evidence to show that its debt collectors acted unintentionally.  Contrary to counsel's suggestion at the motion hearing, a collector's ignorance of the FDCPA's prohibitions does not render the collector's violation of those prohibitions unintentional.  Counsel seemed to further argue that it was entitled to the bona fide error defense because Plaintiff failed to offer any evidence to show that JBC's debt collectors acted intentionally.  It is JBC's burden, however, to prove the elements of its defense.

Moreover, the Sixth Circuit "has explicitly held" that "the bona fide error defense applies only to clerical errors."  *Edwards*, 136 F. Supp. 2d at 800 (quoting *Smith v. Transworld Sys., Inc.*, 953 F.2d 1025, 1034 (6th Cir. 1992)); *see also Bieber v. Assoc. Collection Servs., Inc.*, 631 F. Supp. 1410 (D. Kan. 1986)(finding that misstatement as to percentage of the consumer's wages that could be garnished– 75% rather than 25%– to be an unintentional clerical error).  JBC's violations of the FDCPA do not constitute clerical

errors. As such, the Court finds the bona fide error defense unavailable to JBC.

## VI. Conclusion

In summary, the Court finds that Plaintiff has shown the absence of a genuine issue of material fact with respect to her claim that JBC violated Sections 1962b(2), 1962c(b), and 1962e(2)(A), (4), (5) and (10) of the FDCPA. The Court further concludes that the bona fide error defense is unavailable to JBC with respect to these violations.

Accordingly,

**IT IS ORDERED**, that Plaintiff's motion for partial summary judgment is **GRANTED** with respect to Plaintiff's claims of a violation of Sections 1962b(2), 1962c(b), and 1962e(2)(A), (4), (5) and (10) of the FDCPA.

**IT IS FURTHER ORDERED**, that Defendant's motion for partial summary judgment based on the defense of "bona fide error" is **DENIED.**

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
Marguerite Ann Hanes, Esq.
Sarah J. Lyons, Esq.